IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DARON LORENZO HALL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 120-093 |
| | ) (Formerly CR 118-055 & CR 119-001) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner raises four grounds for relief, including a claim trial counsel failed to file a notice of appeal when directed to do so. The Court appointed attorney Jesse W. Owen to represent Petitioner at an evidentiary hearing on this "lost appeal" claim. Based on the evidence of record, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **DENIED AS MOOT**, (doc. no. 11), the § 2255 motion be **GRANTED** as to the request for an out-of-time appeal and **DISMISSED** without prejudice as to all other claims, the judgment in Petitioner's underlying criminal cases be **VACATED**, an identical sentence be **RE-IMPOSED**, and this civil action be **CLOSED**.

I.  BACKGROUND

   A.  **Indictment and Pretrial Proceedings**

On September 10, 2018, the grand jury in the Southern District of Georgia charged Petitioner in a three-count indictment with certain offenses alleged to have occurred on May

6, 2018.  United States v. Hall, CR 118-055, doc. no. 1 (S.D. Ga. Sept. 10, 2018) (hereinafter "CR 118-055").  Along with naming Petitioner in a forfeiture allegation, the grand jury charged Petitioner with:  possession of a firearm (Zastava Model PAP M92PPV rifle) and ammunition by a prohibited person (Count One), possession with intent to distribute marihuana (Count Two), and possession of a firearm om furtherance of a drug trafficking crime (Count Three).  Id.  Counts One and Two carried possible statutory sentences of not more than ten and five years imprisonment, respectively, and Count Three carried a possible sentence of not less than five years nor more than life imprisonment consecutive to any other sentence imposed.  Id., doc. no. 2.

The Court appointed attorney Kurt Worthington to represent Petitioner.  Id., doc. no. 6.  In his discussions with the government about a plea agreement, Mr. Worthington learned "there [were] some other charges out there against [Petitioner] that were also similar charges involving possession of a firearm."  (Doc. no. 8-3, p. 7 (hereinafter Ex Parte Tr.).[1])  Specifically, the government intended to charge Petitioner in a two-count information with:  possession of firearms (Sig Sauer, Model P220 pistol, Arana CIA revolver, and Mossberg, Model 500 shotgun) by a prohibited person on or about September 19, 2017 (Count One), and possession of firearms (Smith and Wesson, Model SD9VE pistol, Jimenez Arms, Model J.A. Nine pistol, Sig Sauer, Model P250 pistol, and a DPMS, Model A15 rifle) by a prohibited person on or about October 5, 2017 (Count Two).  United States v. Hall, CR 119-001, doc. no. 1 (S.D. Ga. Jan. 7, 2019) (hereinafter "CR 119-001").  Each charge in the information would also carry a potential sentence of not more than ten years imprisonment.  Id., doc. no. 2.  The

---

[1]The *ex parte* transcript has now been made publicly available for these § 2255 proceedings.  (Doc. no. 7, p. 2.)

government offered a plea deal in which Petitioner would plead guilty to "one of the counts in the indicted case" and the other charges would be dismissed, but all relevant conduct would be used for sentencing. Ex Parte Tr. 7-8. After Chief United States District Judge J. Randal Hall set the indicted case for trial, (CR 118-055, doc. no. 21), Petitioner agreed to a plea agreement for the indicted case, (id., doc. entry Jan. 7, 2019), as well as the information case, (CR 119-001, doc. entry Jan. 16, 2019).

The double-captioned plea agreement ultimately was structured so Petitioner would be required to plea guilty to Count One in the indicted case and Count One in the information case, "with the understanding that all of the other guns would be used for purposes of relevant conduct." Ex Parte Tr. 8. Mr. Worthington and Petitioner reviewed the agreement on December 28, 2018, and Petitioner signed it the same day. CR 118-055, doc. no. 25, p. 10; CR 119-001, doc. no. 8, p. 10 (hereinafter, collectively, Plea Agreement). When a question arose about Petitioner's possession of two firearms listed in Count Two of the information, Mr. Worthington requested additional discovery, which he received and provided Petitioner on January 3, 2019, along with an explanation that pleading guilty to one count of the indictment and one count of the information but allowing use of all guns as relevant conduct at sentencing reduced Petitioner's sentencing exposure. (Doc. no. 21, p. 35.)

**B.   Guilty Plea**

On February 13, 2019, Petitioner appeared with counsel to enter a guilty plea in both the indicted case and the information case. CR 118-055, doc. nos. 23-25 and CR 119-001, doc. nos. 6-8. As set forth in the Plea Agreement, Petitioner agreed to plead guilty to Count

One of both the indicted case and the information case. Plea Agreement, p. 1.[2] In exchange for the guilty plea in each case, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment and information; and (2) not object to a recommendation for a two-point acceptance of responsibility reduction. Id. at 4. The Plea Agreement also specifically explained the Sentencing Guidelines are advisory and "are based on all of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty." Id. at 3-4 (emphasis in original). The Plea Agreement also stated, "The government is free to provide full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range." Id. at 4.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

> The elements necessary to prove the offense charged in Count One of the Indictment are: (1) that Defendant knowingly possessed a firearm in or affecting commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year.
>
> Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements: On or about May 6, 2018, in Richmond County, within the Southern District of Georgia, the defendant,
>
> **DARON LORENZO HALL,**
>
> having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit, a Zastava Model PAP M92PV, 7.62 x 39 mm rifle, and 7.62 mm ammunition which had been transported in interstate commerce.
>
> The elements necessary to prove the offense charged in Count One of the Information are (1) that Defendant knowingly possessed a firearm in or

---

[2] Because the Plea Agreement is double captioned and bears the same pagination in each case, for ease of reference, the Court cites only to a singular Plea Agreement.

affecting commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year.

Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements: On or about September 19, 2017, in Richmond County, within the Southern District of Georgia, the defendant,

**DARON LORENZO HALL,**

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit, a Sig Sauer, Model P220, .45 caliber pistol, an Arana CIA, .38 caliber revolver; and Mossberg, Model 500, 12 gauge shotgun, all of which had been transported in interstate commerce.

Id. at 1-2. With his signature on the Plea Agreement, Petitioner agreed he read and carefully reviewed it with Mr. Worthington, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 10.

By signing the Plea Agreement, Petitioner further agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 6. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. By signing the Plea Agreement, Petitioner additionally attested Mr. Worthington had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7-8.

At the guilty plea hearing, Judge Hall first reviewed Petitioner's constitutional rights with respect to the information case and confirmed Petitioner wanted to go forward with a guilty plea in both cases. CR 118-055, doc. no. 59 ("Rule 11 Tr."), pp. 3-5. Petitioner agreed that he did, and Judge Hall proceeded to verify no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id. at 5, 7. Judge Hall reviewed two charges in the information and three charges against Petitioner in the indictment, as well as the potential penalties, and confirmed Petitioner waived his right to be charged in an indictment for the charges brought against him in the information. Id. at 7-10, 15-16. Petitioner confirmed he had as much time as he needed to talk to Mr. Worthington about the charges. Id. at 8-9. Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Worthington and had read and reviewed the Plea Agreement with counsel before signing it. Id. at 12-13.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 10-12. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 14-15. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 15. Additionally, Judge Hall reviewed the potential for a ten-year term of imprisonment on each charge to which he was guilty. Id. at 15. When asked, Petitioner confirmed that he understood the possible imprisonment penalties, as well as the potential $250,000 total fine and three years of supervised release after serving

6

the prison term. Id. at 15-16.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report (PSI), and Petitioner's sentence would be based on the information in the PSI. Id. at 16-17. Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 18. Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence. Id.

Judge Hall next reviewed the elements of the offenses the government would have to prove at trial to obtain convictions on the charges to which Petitioner was pleading guilty, and the government called Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, Firearms, to provide the factual basis for the guilty pleas, the accuracy of which Petitioner did not challenge. Id. at 18-24. Petitioner confirmed he was a convicted felon on the days he had possessed the firearms in the charges to which he was pleading guilty and further confirmed his continuing desire to plead guilty to the two charges listed in the indicted case and the information case. Id. at 24-25.

Judge Hall then found Petitioner had waived his right to indictment on the charge in the information case to which he had agreed to plea guilty and summarized the proceedings as follows:

> I further find that [Petitioner] is competent and fully understands the charges against him. There is a factual basis supporting his guilty plea on each of these charges. He knows the statutory punishment that could be imposed on each charge and he knows his jury rights which he has knowingly and voluntarily waived.

7

>I further find that [Petitioner's] decision to plead guilty to these two charges today was voluntary, knowing, and not the result of any force, pressure, threats or promises other than the promises made by the Government in the signed Plea Agreement. Therefore, I accept the guilty plea by [Petitioner] and find - - and now adjudge him guilty of the count one of the Indictment and count one of the Information based upon his guilty pleas.

Id. at 25-26.

### C. Post-Plea, Pre-Sentencing, *Ex Parte* Hearing

After entry of the guilty pleas but prior to sentencing, Mr. Worthington filed a motion to withdraw, contending the attorney-client relationship had become strained and continued representation of Petitioner would be difficult, if not impossible. CR. 118-055, doc. no. 34. The Court convened an *ex parte* hearing with Petitioner and Mr. Worthington at which Petitioner expressed his dissatisfaction with Mr. Worthington's handling of the Plea Agreement with respect to the number of guns for which Petitioner would be held accountable at sentencing. (See doc. no. 8-3.) According to Petitioner, he was misled as to the relevant conduct, i.e., the number of guns, that would be attributed to him. (Id. at 23-24.) Petitioner strenuously maintained he had nothing to do with the sale of two guns included as part of a charge in the information which had been dismissed under the Plea Agreement but which had been counted against him for sentencing purposes. (Id. at 23-25.) Mr. Worthington acknowledged those two guns had been a sticking point, and he had called the United States Attorney to remove a provision of the plea agreement related to those two guns after Petitioner signed the original version of the agreement. (Id. at 24-25; see also Rule 11 Tr. 13-14.)

The Court denied the motion to withdraw. CR 118-055, doc. no. 38. The Court explained nothing presented at the *ex parte* hearing justified the appointment of substitute counsel, leaving Petitioner with the options to continue with Mr. Worthington, hire his own

8

attorney if financially able to do so, or represent himself. Id. at 2. Petitioner chose to continue with the assistance of Mr. Worthington while making an effort to retain counsel. Id. Petitioner did not retain new counsel and he proceeded to sentencing with Mr. Worthington.

### D.     Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at thirty-four, Criminal History Category at III, and Guidelines imprisonment range at 188 to 235 months. PSI ¶¶ 29, 34, 56. Petitioner's base offense level of twenty was increased four times based on certain offense characteristics, including the number of firearms, possession of a Sig Sauer P250 handgun that had been previously reported stolen, trafficking firearms, and possession of a firearm while also in possession of a felony amount of controlled substances. PSI ¶¶ 18-22. Mr. Worthington made five objections to the PSI, four of which were resolved prior to sentencing. PSI Add.; CR 118-055, doc. no. 60 ("Sent. Tr."), p. 3.

At sentencing, Judge Hall sustained the objection to an enhancement for trafficking firearms under U.S.S.G. § 2K2.1(b)(5). Part of the resolution of the objections prior to sentencing included credit for acceptance of responsibility which had previously been withheld. PSI ¶ 28; PSI Add; Sent. Tr. 6-7. Accordingly, Judge Hall determined Petitioner had a Total Offense Level of twenty-seven, Criminal History Category III, and Guidelines imprisonment range of eighty-seven to 108 months. Sent. Tr. 6-7.

The statutory maximum for each charge to which Petitioner pled guilty was ten years. PSI ¶ 55. Had Petitioner been convicted of the 18 U.S.C. § 924(c) charge in Count Three of the indictment dismissed as part of the Plea Agreement, the statutory penalty would have required a minimum, mandatory, consecutive five-year term of imprisonment. CR 118-055, doc. no. 2, p. 2; PSI ¶ 57.

Several family members testified on Petitioner's behalf at sentencing. Sent. Tr. 8-12. Petitioner chose not to make a statement. Id. at 14. In mitigation, Mr. Worthington emphasized Petitioner's family ties and intention from the outset to "own up" to the charges. Id. at 13. Mr. Worthington also emphasized the extended amount of time he had spent with Petitioner and his desire to turn his life around and see his children grow up. Id. Judge Hall imposed a term of imprisonment at the top of the Guidelines range, 108 months, in each case, to be served concurrently. Id. at 16; CR 118-055, doc. no. 50; CR 119-001, doc. no. 18.

In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

### E.     § 2255 Proceedings

Petitioner raises four claims in his § 2255 motion:

(1) Counsel provided ineffective assistance by failing to: (a) explain prior to Petitioner signing the Plea Agreement the potential for an enhancement based on conduct falling outside the offense conduct; and (b) challenge application of such an enhancement;

(2) The sentence imposed was improperly calculated based on conduct in which Petitioner did not participate;

(3) Counsel did not file an appeal after Petitioner instructed him to do so; and

(4) The 18 U.S.C. § 922(g) convictions based on Petitioner's guilty plea are no longer valid in light of Rehaif v. United States, 139 S. Ct. 2191 (U.S. 2019).

(See generally doc. no. 1.)

The Court scheduled an evidentiary hearing on Ground Three and appointed Mr. Owen to represent Petitioner as to Ground Three only. (See doc. no. 13.)

### 1.     Petitioner's Evidence and Testimony Regarding Lost Appeal Claim

As originally presented in the § 2255 motion, Petitioner asserts he told Mr. Worthington he wanted to appeal his sentence because it had been improperly calculated based on attribution of two guns with which he was not involved. (Doc. no. 1, pp. 9-10.)  At the evidentiary hearing, Petitioner consistently testified he requested Mr. Worthington to file an appeal.  Court's Recording System, *For the Record* (FTR I), 10:42.40-:43.05.[3]  He also testified Mr. Worthington did not review any appellate procedures or deadlines that would have to be met to file an appeal.  FTR I 10:43.07-.28.  Petitioner also testified he told counsel he wanted to appeal and raise the issue there had been no objection to counting two firearms he did not sell as part of the relevant conduct used to calculate his sentence.  FTR I 10:43.30-.44.  He also consistently testified he had informed Mr. Worthington throughout the plea process and sentencing he was dissatisfied with the attribution to him of the two guns with which he had no involvement.  FTR I 10:50.44-.51; 10:51.50-:52.30.

### 2.     Mr. Worthington's Testimony

Mr. Worthington, a highly regarded attorney with years of criminal defense experience in the Southern District of Georgia, negotiated a plea agreement to dispose of two sets of charges in two separate cases, thereby removing the worst case scenario of a guilty verdict at trial on the indicted case and then facing a consecutive sentence if the charges in the information case proceeded via a subsequent plea or trial.  FTR I 11:05.00-:06.14.  Mr.

---

[3]The Court first convened the evidentiary hearing on February 2, 2021.  (See doc. nos. 17, 20.)  At Petitioner's request and with the government's consent, the Court heard testimony from Petitioner and Mr. Worthington that day and then continued the hearing until February 23, 2021, to allow Petitioner's witnesses to appear.  (See doc. nos. 23, 24.)  For ease of reference, the Court cites to FTR I for testimony offered February 2nd and to FTR II for testimony offered February 23rd.

Worthington also successfully argued an objection to the PSI which cut Petitioner's sentencing range from 188 to 235 months more than half to a range of eighty-seven to 108 months.

However, in contrast to Petitioner's consistent testimony, Mr. Worthington's hearing testimony was equivocal concerning whether Petitioner asked him to file an appeal.  Although Mr. Worthington said he would have filed an appeal if he had been asked to do so, he could not recall whether he had received an instruction to appeal.  FTR I 11:31.22-:32.15.  Mr. Worthington recalled speaking with Petitioner's family after sentencing, but he could not recollect whether he spoke with Petitioner after sentencing.  FTR I 11:29.50-:31.19; 11:58.30-12:01.08.  The one point on which Mr. Worthington was able to confidently testify was that he did not review Petitioner's appellate rights with him after sentencing, and he did not complete a post-conviction consultation form to memorialize Petitioner's wishes about filing an appeal.  FTR I 12:02.20-:05.18.  Mr. Worthington would have discussed Petitioner's appellate rights as part of his review of the content of the Plea Agreement with Petitioner,[4] but he could not recall his pre-plea discussions covering procedural aspects of an appeal.  FTR I 11:39.22-.44; 12:04.31-:05.18.  Mr. Worthington also testified he saw no issues to raise on appeal because (1) Petitioner entered a guilty plea; (2) the sentence was within the Guidelines range; and (3) he had obtained a significant reduction of the Guidelines range by winning an objection raised to the firearms trafficking enhancement which originally had been applied in the PSI.  FTR I 11:39.01-.19.

---

[4]As discussed above, the Plea Agreement contained an appellate waiver.  CR 118-055, doc. no. 25, p. 6 ¶ 10.  The Plea Agreement does not contain a general discussion of appellate rights and/or procedure.

### 3. Testimony of Petitioner's Witnesses

Three witnesses appeared on Petitioner's behalf: Ms. Patricia Hall, Petitioner's grandmother; Ms. Leila Gardner, Petitioner's cousin who considers Petitioner her nephew; and Ms. Destiny Goodwin, the mother of Petitioner's two children. The government invoked the rule of sequestration. Each witness testified they participated in a group discussion with Mr. Worthington after Petitioner's sentencing wherein Mr. Worthington said he would file an appeal and/or talk to Petitioner about an appeal, though each presented a slightly different version of the exact content of the discussion. FTR II 2:05.16-:06.23; 2:11.21-:12.08; 2:17.35-:18.53. None of the witnesses could identify any specific issues Mr. Worthington identified as a basis for an appeal, but they all consistently testified that, although they did not follow up with Mr. Worthington about the appeal, they understood counsel would pursue an appeal. FTR II 2:07.14-:08.43; 2:12.39-:14.03; 2:15.28-.35; 2:19.29-:21.55.

## II. DISCUSSION

The Court heard testimony from Petitioner that he told Mr. Worthington to file an appeal and from three family members who all assert Mr. Worthington said he would take care of filing an appeal. Mr. Worthington honestly could not recall the specific content of discussions that may or may not have occurred with Petitioner and family members concerning instructions to file an appeal. Petitioner is entitled to relief on his lost appeal claim because Mr. Worthington should have consulted with him after sentencing to determine whether Petitioner had any desire to appeal.

### A. Petitioner's Burden Under **Strickland v. Washington,**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500,

505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*); see also Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (holding that Strickland test applies to ineffective assistance claim alleging failure to file an appeal). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.

Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Under the prejudice prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

> **B.  Mr. Worthington Breached Hist Duty to Consult Regarding an Appeal When Petitioner Reasonably Demonstrated His Interest in Appealing, Resulting in Prejudice to Petitioner**

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Flores-Ortega, 528 U.S. at 477-78 (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions). Assuming Petitioner never instructed Mr. Worthington to file an appeal, the inquiry does not end there.

All defense counsel have a general duty to consult about an appeal, including informing a client about the right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to

14

pursue an appeal.  Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007).  Despite this general duty, the Supreme Court has specifically declined to adopt "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Flores-Ortega, 528 U.S. at 480.  Rather, taking into consideration the totality of the circumstances, counsel has a duty to consult regarding an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id.

With respect to the instant motion, Mr. Worthington forthrightly acknowledges he did not consult with Petitioner about an appeal after his sentencing.  FTR I 12:02.20-.36; 12:03.45-:05.18.  The determinative question, therefore, is whether there was a duty to consult under the circumstances.  The following passage provides important guidance from the Supreme Court concerning this determination.

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Id.

The Court concludes Mr. Worthington did have a duty to consult with Petitioner about an appeal because he reasonably demonstrated his interest in appealing.  It is undisputed Petitioner complained throughout the plea and sentencing process about attributing to him two disputed firearms.  First, as described in detail above, Petitioner immediately contacted Mr.

15

Worthington after signing the original plea agreement to complain about inclusion of two firearms listed in Count Two of the information, resulting in Mr. Worthington requesting additional discovery and reaching an agreement with the Assistant United States Attorney to remove certain language from the Plea Agreement related to the guns.

Second, the focus of the *ex parte* hearing on Mr. Worthington's motion to withdraw was Petitioner's dissatisfaction with how the two disputed firearms would be counted against him at sentencing.  Third, Mr. Worthington prepared objections to the PSI related to the two firearms that were dropped prior to the sentencing hearing in an effort to secure a three-point acceptance of responsibility reduction.  Although Petitioner acknowledges Mr. Worthington explained the acceptance of responsibility reduction lowered his sentencing exposure, Mr. Worthington could provide no written documentation of Petitioner's agreement to drop the firearms objection.  Fourth, although Mr. Worthington successfully argued a trafficking enhancement that cut in half Petitioner's Guidelines range, Judge Hall sentenced Petitioner to the top of the newly calculated range.

As set forth in its argument and citation to case law at the evidentiary hearing, the crux of the government's position Mr. Worthington did not have a duty to consult is based on the reduction of the initial Guidelines range of 188 to 235 months to a range of eighty-seven to 108 months.  Mr. Worthington achieved important victory by successfully arguing against application of an enhancement for trafficking firearms under U.S.S.G. § 2K2.1(b)(5) and secured the full three-point acceptance of responsibility reduction.  See, e.g., United States v. Edgerton, 282 F. App'x 287 (4th Cir. 2008) (*per curiam*); United States v. Bradberry, Nos. 3:07cr11/MCR, 3:08cv170/MCR/MD, 2009 WL 1043880 (N.D. Fla. Apr. 16, 2009).  While these cases stand for the well-settled proposition that a sentence at the bottom of the Guidelines

16

range imposed as a result of a plea agreement containing an appeal waiver may show a defendant did not reasonably demonstrate an interest in appealing, they are not on point with the circumstances of this case.

Judge Hall sentenced Petitioner to the top of the newly calculated Guidelines range, 108 months. Mr. Worthington had no written verification of Petitioner's agreement to drop the objection concerning attribution of the two disputed firearms, and by sustaining Mr. Worthington's objection on the trafficking charge, Judge Hall agreed the trafficking enhancement did not apply to Petitioner. Thus, the fact that Petitioner's sentencing exposure dropped to more than half the original calculation is not dispositive in light of the fact the original calculation was too high. The Court understands the government's argument that the full acceptance of responsibility reduction was premised on Petitioner's agreement to drop his challenge to responsibility for the two additional firearms, but the Court cannot ignore those two additional firearms were a sticking point for Petitioner even from the first point a plea agreement was offered and accepted.

Given the lengthy history of objections by Petitioner, including a hearing on Mr. Worthington's motion to withdraw based on a disagreement with Petitioner about how to proceed concerning those two additional firearms, the Court concludes Petitioner reasonably demonstrated an interest in appealing such that Mr. Worthington had a duty to consult. Mr. Worthington acknowledges he did not consult with Petitioner at any time after sentencing concerning his appellate rights, and as argued by Petitioner's current counsel, the actions taken by Petitioner after his conviction, including pursuing information in support of his § 2255 motion, represent the actions of a person interested in appealing who did not have the necessary information about the proper procedure for pursuing his appellate rights.

That Mr. Worthington did not see any viable appellate issues does not vitiate the duty to explain the appellate process, describe the advantages and disadvantages of filing an appeal, and explain his obligation to file an appeal if Petitioner so desired.  See Thompson, 504 F.3d at 1207.  Nor does the fact that Petitioner signed a Plea Agreement with an appeal waiver mean that Mr. Worthington was automatically relieved of his obligation to consult with Petitioner. See Gomez-Diaz v. United States, 433 F.3d 788, 793 (11th Cir. 2005) (ruling that if counsel failed to fulfill duty to determine client's wishes about appealing, prejudice is presumed and entitles petitioner to an out-of-time appeal, regardless of whether there are meritorious issues fitting exceptions to appeal waiver).  While the government would certainly be free to raise the waiver provision in the Plea Agreement if an appeal were filed, Petitioner would also be free to argue why he believes the waiver is somehow invalid or simply not applicable to his appellate claims.

In sum, the Court finds Petitioner has satisfied his burden of showing he reasonably demonstrated an interest in appealing, and therefore Mr. Worthington had a constitutionally imposed duty to consult with Petitioner about filing an appeal.  Therefore, the Court also concludes Petitioner met his burden of showing the requisite prejudice under Strickland because as a result of the lack of consultation, Petitioner lost his right to appeal.  See Thompson, 504 F.3d at 1208.

### C. Procedure for Restoring Petitioner's Appellate Rights

When a court determines that an out-of-time appeal in a criminal case is the proper remedy in a § 2255 proceeding, the Eleventh Circuit directs that the remedy should be effected in the following way:

>   (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by Rule 4(b)(l )(A)(i).[5]

United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).  The Court recommends these procedures to re-institute Petitioner's right to appeal.  Unless Petitioner elects to retain his own counsel for the appeal, the Court recommends appointment of appellate counsel prior to reimposing sentence.  After reimposition of Petitioner's sentence, Petitioner will have fourteen days in which to file a notice of appeal.

In light of the recommendation that Petitioner be allowed to file an appeal, the Court declines to address Petitioner's remaining § 2255 claims and recommends that those claims be dismissed without prejudice.  See United States v. Wiles, 563 F. App'x 692, 695 (11th Cir. 2014) (*per curiam*).  For example, although the government has argued in these proceedings that Petitioner agreed to an appeal waiver as part of his plea agreement, (doc. no. 8, pp. 21-22), whether the government invokes the waiver and/or the Eleventh Circuit would enforce it is an open question.  What is known, however, is that at least some of Petitioner's remaining claims, for instance his Rehaif challenge[6] and dispute about the Guideline calculation, are the type of claims that may be brought on direct appeal.  See United States v. Reed, 941 F.3d 1018, 1021-22 (11th Cir. 2019); Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996).

---

[5]The Rules of Appellate Procedure were amended in 2009 to provide fourteen days to file a notice of appeal.  See Fed. R. App. P. 4(b)(1)(A)(i).

[6]Petitioner clarified his Rehaif claim is a stand-alone claim, not the basis for an ineffective assistance claim. (Doc. no. 19.)  Thus, the motion to dismiss a new ineffective assistance claim should be **DENIED AS MOOT**. (Doc. no. 11.)

III. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **DENIED AS MOOT**, (doc. no. 11), the § 2255 motion be **GRANTED** as to the request for an out-of-time appeal and **DISMISSED** without prejudice as to all other claims, that the judgment in Petitioner's underlying criminal cases be **VACATED**, that an identical sentence be **RE-IMPOSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of March, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA